The question in this case is whether a doctor who treats civilly committed patients may prescribe those patients antipsychotics they have refused without ever telling them. Mr. Johnson told Dr. Tinwalla that he did not want to take the powerful antipsychotic Risperdal. But Dr. Tinwalla then prescribed Mr. Johnson that drug anyway on a nightly basis without ever notifying Mr. Johnson of what he had done. Dr. Tinwalla Sotomayor If the doctor can demonstrate on remand that Johnson met the standard under Harper that he was a danger to himself or others, what part of Johnson's claim would remain? Mr. Johnson I would say that, Judge Rovner, that all three claims would remain. First, for the substance-induced process claim, the question is not merely whether Mr. Johnson was dangerous to himself or others. It is whether Dr. Tinwalla found at the time of treatment that Mr. Johnson met that standard. Dr. Rovner Well, I mean, I know that Dr. Tinwalla didn't follow procedures here for, you know, administering drugs against the detainee's will. But what if he can show that, had he followed the procedures, a prescription would have been authorized? Mr. Johnson That would not make a difference for all three of the claims because, again, Harper would require him to make that decision at the time of treatment. The overarching standard under Harper is reasonableness and is hardly reasonable for a doctor to prescribe first and ask questions later. He did not do that here. And in particular, he did not make the prescription available merely on a basis of giving Mr. Johnson access, like he claims, after the fact. Instead, he prescribed the drug QHS, or nightly, instead of prescribing a PRN, or on-demand, when Johnson would need it. And the record, in fact, shows that Dr. Tinwalla knew how to prescribe Mr. Johnson access when he needed it. Dr. Tinwalla says in his affidavit on page 57 of the appendix that he also gave Mr. Johnson what he calls access to the anti-anxiety pill Ativan in 2014. But if you look at the actual prescription on page 125 of the record, that shows that Dr. Tinwalla prescribed the drug PRN, that is, on a basis as needed. And that fact shows that Dr. Tinwalla knew how to prescribe Mr. Johnson pills, so as a way to give him access. He knew how to follow those procedures, but he disregarded them. And it is that reckless action which makes him liable under Section 1983. Why is force not a requirement to establish a claim under Harper? Under your reading of Harper, don't you really create a constitutional claim for mere medical malpractice or negligence? Well, there are two answers to that question, Judge Williams. First, as the Ninth Circuit held in United States v. Williams, referenced in our brief, the means used to compel administration of a drug does not detract from the fact that it is still unwanted and that it still violates a person's fundamental rights. So, for example, if a person is ordered by a court on pain of contempt to take medication, it is just as unwanted and involuntary as if he were ordered to do it by court or if he were physically forced to do so. Second, your Honor asked whether this is merely a claim for malpractice. And of course, Section 1983 liability is not available for negligent acts, but that's not, as we said, what happened here. Dr. Tinwala, a reasonable jury, could find was reckless when he knew that Mr. Johnson had explicitly refused medication, but he prescribed it to him anyway under circumstances where Mr. Johnson did not know that he was taking an unwanted drug. Is there any evidence in the record that Dr. Tinwala knew that Johnson took several other medications each night? In other words, did he have any reason to know that Johnson would not notice he was being given a pill that he had, you know, specifically refused? Well, first, your Honor, the record shows on page 19 of the appendix in the observation notes that Dr. Tinwala made for the visit where he prescribed the Risperdal that he had reviewed Mr. Johnson's medical history, and so he would have been aware of what medication Mr. Johnson was taking. Further, I believe a reasonable jury could find that by virtue of his position, Dr. Tinwala knew or should have known how medications would have been administered at the Rushville facility. That is, that they would have been given unlabeled in a cup by a nurse who would have no idea what the medications actually contained. And let me ask you this. You talked about the consequences of him taking that medication. What evidence is there to support his claim for damages that he ingested this medication? Well, Judge Williams, there are two sources of damages that Mr. Johnson claims here. First, he has alleged, of course, that he has suffered side effects. He has suffered, for instance, the painful and embarrassing symptoms of having migraines, of dizziness, of constipation, and of lactation. He is entitled to allege to a jury what the amount of those damages should be. And second, I would add that he has also alleged emotional distress from the fact not only that he was taking medication he did not want, but that he expected a due process hearing before being given unwanted medication, and he felt violated as a result of being stripped of that right. And those damages, was there medical testimony about that? Remind me. There was no expert medical testimony, Your Honor, at the summary judgment stays. However, we would submit at the same time, expert testimony would not be necessary for a jury to find that Dr. Tinwala had stepped below professional standards or that Mr. Johnson had in fact suffered those symptoms. It's just that he was taking so many medications and the interaction of those medicines and how they would affect, I mean that's why I asked the question, in terms of medical testimony. It would be possible, yes, Your Honor, for the interactions of drugs to cause the particular symptoms he had. But is there any indication that he was harmed physically by the Respidol? The indication is his own testimony that he suffered the symptoms I've discussed, dizziness, migraines, and so on. But he's taking all this stuff, right? So how can Respidol be blamed? Well, Dr. Tinwala admits that Respidol by itself could have those side effects, but what damages could be attributed, particularly to the Respidol and not, say, to some other medication would be a question of fact that would be determined by a jury at trial. I would also turn, if I could, to the procedural due process claim. Because in addition to the district court's error in saying that Harper... That's not what I'm saying. I understand how he didn't want to take the drug and so on. But is there evidence that without the Respidol he would have been feeling better? Do we know that? Because he was taking all these other drugs as well. All we have is Mr. Johnson's undisputed testimony that the side effects began to appear after the medication was prescribed to him. I would note, of course, that Mr. Johnson's due process rights were violated ever before he started feeling the side effects. No, I understand. I understand. And has he stopped taking it? Yes. Mr. Johnson immediately stopped taking the Respidol as soon as he was informed that it was being given to him. And I should note, he only found out because Dr. Tinwala sent him a letter saying that you have missed follow-up appointments, therefore I am discontinuing your Respidol. Does he feel better now? He certainly does not allege the same symptoms he had during the time he was taking the Respidol, no, Your Honor. Is there a medical literature on the effects of Respidol? There is at the very end of the appendix, Your Honor, a short summary of what Respidol could do in terms of side effects. I would also note that Dr. Tinwala admits in his affidavit beginning, I believe, on page 55 of the appendix that Respidol could have the same side effects as what Mr. Johnson has alleged here. If there are no further questions, I would like to reserve the remainder of my time for rebuttal. Okay. That's fine, Mr. Ellis. Ms. Tucher? Good morning, Your Honors. Julie Tucher on behalf of the defendant, Dr. Tinwala. This Court has been very careful about identifying substantive due process rights, as has the constitutional violation, and that's what Mr. Johnson is doing here. The Supreme Court in this Court has held that the forcible administration of medication to a detainee implicates substantive due process rights, but there's no forcible administration of medication involved in this case. Well, what's the difference between forcible and deceptive? First of all, there's no evidence of deception here, Your Honor. Well, he didn't tell them, though, that he was getting this stuff, right? In their conference together, they talked about the drug. Mr. Johnson initially agreed to it. He said, I signed the consent form, which provided I can refuse this medication at any time. Mr. Johnson acknowledged this, knowing he could refuse the medication, but then he panicked when Dr. Tinwala, according to Johnson, said something to the effect of, well, it's a good thing you came in to see me today, because they may have forced you to take this medication. Johnson panicked and left the room. Dr. Tinwala then prescribed the medication to be given access to Johnson. This is the institutional setting. Dr. Tinwala didn't know when he would have the ability to see Johnson again, if Johnson changed his mind. But the important and critical point here is that each and every day, Mr. Johnson admits that he had the ability and the right to ask the nurse dispensing his medications what medication he was being given, and critically, he had the right and the ability to reject and refuse the medication. So on any given day, he could have said, what is that medicine? I refuse to take it. And his ability to refuse the medication takes him outside of those patients. Well, did he know he was taking this drug? He says he does not, but the critical inquiry is, could he have known, could he have asked? What does that mean, could he have known? If he had asked. A constitutional deprivation means that he would have been denied his right to refuse. In other words, even if he had known, we could have said, you still must take the medication. And so how healthy is he mentally? He has bipolar disease. Yeah, so in other words, he has psychiatric problems. But he's competent. He's mentally competent, but he has a psychiatric disorder that results in... Well, you say he's mentally competent and he has a psychiatric disorder. That doesn't sound right. Well, I think that's fairly common, Your Honor, that these detainees are diagnosed with a mental illness, but they're still... This is Rushfield. Yes. This is not for ordinary people with a headache, right? Right. In fact, most of them are very unstable, right? That's why they're there. He was there for mental health rehabilitation. Most of the time, he was just going to therapy. The only other drugs he was on at the time were for stomach ailments and hypertension. The reason he came to see Dr. Tinwala that day on his request was because he was experiencing increased anger and irritability. Within the three weeks before he saw Dr. Tinwala, he had three separate incidents of threatening individuals at the institution. And that's symptomatic of bipolar, when someone's on the manic phase. Correct. Correct. And the Illinois Code talks about treatment of developmentally disabled people or people like him. I mean, that's the whole reason he's in Rushfield, right? And here we had a situation where... I'm moving on to something else in terms of the motion to dismiss. He was represented pro se. The court dismissed it, and he should have been given an opportunity to amend, but as I understand it, he was never even informed of the decision on the motion to dismiss. The medical battery count was disposed of at the 1915 E hearing, but not the remainder of his counts. The remainder of his counts for substantive and procedural due process violations and for the negligent infliction of emotional distress, those were disposed of at summary judgment. Right. I understand, but what I'm saying on the motion to dismiss, it was just a single sentence in count three of the complaint. It was conclusory, and I'm not quarreling that the court rightly dismissed it. But he was pro se. He was pro se. And so the question is whether the district court should have given him leave to amend and perhaps appointed counsel for him so that he might be able to plead his claim for medical battery under Illinois law. Mr. Johnson did not request either leave to amend, and he didn't request counsel. No, I take that back. I think he had requested counsel. Yeah. He did not request leave to amend. Mr. Johnson is an experienced litigator. He's filed several lawsuits, and I've cited to three of them in my brief where he requested leave to amend his complaint. He was aware of his rights. I think you can tell from the underlying papers in this case that Mr. Johnson is intelligent, and he is an aggressive litigator. Why is he in Rushville? He was in Rushville because of his bipolar disorder and his need for, he was committed to sexually violent behavior. I thought Rushville was for criminals. It is. So he must have a criminal history. I'm sorry, Your Honor, I misunderstood your question. Yeah, so what was his criminal history? Sexual violence, armed assault, rape, that is contained in the record. So he's not just bipolar. No, he's a violent criminal. He's a serious nut. He's a violent criminal who has been moved over to Rushville from the Department of Corrections for mental health care. Because you treat him as a totally rational person. Knew everything, knew what he was doing, et cetera, et cetera, made intelligent choices, right? That's how you depict him to us. And I think if you read his papers in the district court or you read his deposition, you will see that he is a very articulate. He's a very what? He's very articulate. He's very capable. He described in his deposition. Articulate, capable, sex offender. Well, you can be an intelligent individual and commit crimes. Yeah, sounds bad. So couldn't a reasonable juror determine that Johnson had no meaningful right of refusal? Because you said he could have refused it if he asked the nurse. But we have a situation where the nurse handing him the pills didn't know what the medications were, right? Right. So if he had asked, it would have been of no moment or no consequence because she didn't know what it was. Well, when he did ask her, she said, I'm not sure. And he asked her to find out. And she did and came back and said, there's Risperdal in your medication cup. At which point he said, I'm not taking that. I refuse to take that. A refusal that was honored and never countermand. How long had he been taking it? About five and a half weeks. Did he know during the five and a half weeks he was taking it? I'm sorry, I didn't hear you. Did he know during that five and a half weeks that he was taking it? Mr. Johnson claims he did not know during those weeks. Even though he testified at his deposition, he knew, he was familiar with the pills he was being given on a daily basis. This was an additional pill in his cup. He claims that he did not know that it was in his medication cup. Well, the Risperdal wasn't labeled, right? No, it was not labeled. So there was no reason for him to know, was there? Well, if there was an indication, that would have been indication that there was something in there that was different than the medications he had been receiving. The point here is... Now, could the state avoid liability for administering unwanted drugs by simply crushing them up and hiding them in the food of unsuspecting detainees? No, and that's not what happened here, Judge Rovner. But how is this any different? That's my problem. I mean, why would he have had any reason to believe that his nightly cup of pills, I don't know, contained a substance that he had specifically used? How would he know that? I think what Dr. Tinwala did here was very different than crushing medications and slipping it into his applesauce. He had Mr. Johnson in with him. He evaluated him. He decided, even after Mr. Johnson left the room, I want to make this medication available to him if he chooses to take it. I have a violent inmate on my hands who's expressed a current intent to assault an institutional employee who's had three citations for threatening behavior within the last few weeks. His behavior was escalating. Dr. Tinwala's intention wasn't to trick him. There's no evidence of that. Dr. Tinwala's affidavit establishes, I wanted to make this available to Mr. Johnson if he changed his mind again and decided he wanted to take it. Johnson came to Tinwala and said, I'm having anger issues. I'm having irritability. My psychologist says that you might be able to help me with a medication. But, of course, Tinwala never asserted that a medical emergency existed. He did not. No. The difference here is, was he denied a due process right? And the answer to that is no. Every single day he had the right to refuse to take any of his medications. That's the difference between what occurred here and the cases that Mr. Johnson has cited. Is this a medical negligence case? It might have been. If we're talking about whether he should have discussed it further with the patient, what Mr. Johnson should have known, those are tort considerations. What Mr. Johnson has alleged here are due process violations. Substantive due process violations. And this court and the Supreme Court has said there are only a handful of those. And one of those involves the forcible administration of medication. But there is no dispute here that he was not forcibly injected with this medication. It was given to him daily in his cup. He had the right, the ability to refuse it and he eventually did. Well, did he have the ability? I'm not at all sure about that. Because he seems to be a seriously disturbed person. Mr. Johnson, at his deposition... Not a normal person at all. At his deposition he was asked specific questions. You can't treat the people in Rushville as normal people. With the normal freedom of people. They're prisoners, right? They're all prisoners. The question is, did he understand that he had the ability to question what medications he was given and what medications he could refuse? And he said at his deposition, yes, I knew that. I knew I could ask and I knew I could refuse. And that right to refuse is what takes this out of a substantive due process claim. If it's anything, it was medically negligent. So has he been examined by another psychiatrist? Not to my knowledge. Pardon? The record does not... Why doesn't Rushville want him to be examined by another psychiatrist? He may have been, Your Honor. I simply don't know that based on the record. Okay. So I would ask that this Court affirm the District Court's determination that this was not a substantive or procedural due process violation and affirm the judgment in favor of Dr. Tynwala. Okay. Well, thank you, Ms. Tuescher. Thank you. Mr. Ellis, anything further? Thank you, Your Honor. I would like to make three quick points in response. First, Dr. Tynwala argues that Mr. Johnson was competent and that he could or should have done more to find out what he was taking. But the Supreme Court's decision in Zinnerman v. Birx is fatal to this claim. Zinnerman establishes that when a psychiatric hospital is deciding whether to admit a patient voluntarily, they can't simply trust the patient's word because, of course, the patient might be mentally ill. Rather, the burden is on the institution as the only person, that is, as the psychiatrist being the only person to take notice of whether the patient is in fact competent, the burden is on them to find out whether informed consent has been given. The same result obtains here. The burden lay on Dr. Tynwala to find out whether Mr. Johnson was consenting to Risperdal. He knew that Mr. Johnson was not consenting to Risperdal. That action in prescribing the medication anyway was reckless. Second, Dr. Tynwala also argues that his intent was merely to provide Mr. Johnson access to the Risperdal. But as we stated, that is only in his self-serving affidavit's aptitude. In fact, he never stated at the time that he was trying to merely give Dr. Johnson access to Risperdal. At the very least, that is a question of fact. I would also say that... Of course, there's no evidence that the nurse knew anything about that, that he had an option or presented him with any kind of option. None whatsoever. And I would add, of course, that whether Mr. Johnson had any inquiry notice, whether he was competent, whether he could or should have done more, is at a minimum a question of fact that must be determined by a jury at trial. Finally, I would state briefly that Mr. Johnson did in fact plead a proper claim for medical battery in his complaint. While the battery count was one sentence, I would note that this court reads complaints in its entirety, and he alleged each of the three elements of battery under Illinois law. He alleged an intentional act when he said that Dr. Tinwala intentionally gave him Risperdal he did not want. He alleged an offensive contact when he said that he took Risperdal that he did not want and suffered side effects as a result. And he made clear again and again that he did not consent. I would therefore ask that the judgment be reversed and that all three claims for substantive due process, procedural due process, and medical battery proceed to trial. Thank you. Thank you, Mr. Ellis and Ms. Tushnet. And court will be in recess until tomorrow. Thank you.